WATERBURY *vs.* THE MERCHANTS' UNION EXPRESS
COMPANY.

50b 157
27ap556

50b      157
172 NY⁵584

50b      157
e 78 AD⁵617

In an action brought to obtain a judgment or decree dissolving an express company, organized as a joint stock association, and for the appointment of a receiver to wind up its affairs, the defendants put in an answer, denying and refuting, upon the oaths of their officers and executive committee all the allegations upon which the right to relief was based. The plaintiff then moved, upon *ex parte* affidavits, for a receiver, to take charge of the business and affairs of the company for the time being, and to have its condition examined by an account to be taken under the direction of the court, with a view to an ultimate determination of the question whether it should be allowed to go on, or must be arrested in its operations. *Held* that such a motion could not be granted, with the issue yet untried and undetermined, unless, on the affidavits before the court, it appeared, beyond the possibility of doubt, that in the final decision of the cause the relief prayed for in the complaint must be granted.

An illussory suit in the name of a shareholder, but really prosecuted by, and in the interest of, a rival and competing company, cannot be maintained for the purpose of dissolving or restraining another association or company of which the nominal plaintiff may be a member.

Accordingly, where, in an action thus brought against an express company, the defendants alleged in their answer that the plaintiff was not the real party, but that the action was prosecuted wholly at the instigation, and in the interest of rival express campanies which were the real and actual plaintiffs in the controversy; and in affidavits and depositions read by the plaintiff on a motion for a receiver, this allegation was not denied; *it was held* that the fact as alleged by the defendants, must be taken to be true, for all the purposes of the motion; and that, taking it to be true, it was fatal to the suit.

The nature and legal character of joint stock associations, organized under the statutes of New York, considered.

They have all the attributes of a corporation, except the technical one of a common seal; and in respect to the absence of a common seal, merely, they are like partnerships.

In controversies between a shareholder and the joint stock association to which he belongs, courts must follow, mainly, the analogies afforded by the laws and jurisprudence relating to corporations, instead of those derived from the law of simple partnership.

The infidelity or misconduct of some or even of all, of the trustees or managers of such an association, affords no ground for taking away the rights of the shareholders who constitute the company, either by dissolving it, or taking away its management, and placing it in the hands of an officer of the

court. In such a case, the principles of remedial or preventive justice go no further than to enjoin or forbid the misconduct, or to remove the unfaithful officer.

THIS was a motion for the appointment of a receiver of the defendants, The Merchants' Union Express Company, to take charge of its business and affairs. The action was brought by the plaintiff a shareholder, against the express company and Elmore P. Ross and others, constituting the executive or managing committee, to obtain a dissolution of the company, and the appointment of a receiver to wind up its affairs.

GEO. G. BARNARD, J. The object of this suit is to obtain a judgment or decree of this court dissolving the company, and for the appointment of a receiver to wind up its affairs. The company was organized in the year 1866, as a joint stock association, according to the laws of this state, with a capital of $15,000,000, divided into shares of $100 each. The stock was all subscribed for. By its articles of association the duration of the company was to be fifty years, and the individual defendants, Ross and seven other persons, were named in the same articles as the executive committee for the first year. The same individuals and a number of other persons were constituted the first board of trustees. Having completed its equipment, the company commenced business in October last, and it is now in vigorous operation on about 15,000 miles of railroad, including all the main lines of transit from the seaboard to and beyond the Mississippi river. Its principal competitors are the American and the United States Express Companies, and the evidence before me tends strongly to show that the volume of its business is equal to that of both those companies combined. The two other express companies here named are institutions of an older date, and they, together with the Adams Express Company, whose operations are confined mainly to the seaboard, had monopolized the express business of the country for many

years prior to the organization of the Merchants' Union. It appears that they had divided territory and railroad lines so that the rates and charges of any one of them might not compete with either of the others.

Waterbury claims to have been an original subscriber for fifty shares of stock in the Merchants' Union Express Company, and subsequently to have purchased one hundred shares, and, as a shareholder or partner in the enterprise, he asks in his complaint for a dissolution and a receivership, upon the grounds which I shall hereafter notice.

The defendants answered the complaint in June last, denying and refuting, upon the oaths of officers and executive committee, all the allegations upon which the right to the relief demanded is based. Issue was thus joined; but there was no trial or hearing of that issue.

The particular proceeding now before me is an interlocutory motion, on *ex parte* affidavits, for a receiver to take charge of the business and affairs of the company for the time being, and to have its condition examined by an account to be taken under the direction of the court, with a view to an ultimate determination of the question whether it shall be allowed to go on, or must be arrested in the first year of its operations. It is quite too plain to require serious argument, that such a motion cannot be granted with the issue yet untried and undetermined, unless on the affidavits now before me it appears beyond the possibility of doubt that in the final decision of the cause, the relief prayed for in the complaint must be granted. Unless that appears from facts and evidence entirely unanswerable, it would be a judicial interference of the most unwarrantable kind now to take from a company of such vast and varied concerns the conduct and management of its own affairs.

Before proceeding to more particular questions it will be useful to consider briefly the nature and legal character of these joint stock associations. They are organized, not as

simple partnerships, but with written articles of association framed under and with reference to the statute laws on the subject. The first act was passed in the year 1849. It was amended in the year 1851, and again in 1854. A further act, passed at the session of 1867, authorized these companies to hold real estate in perpetual succession. By an examination of all these statutes it will be found that joint stock companies possess the following qualities or attributes of corporations : 1. They can, like corporations, sue and be sued in a single or collective name, to wit, the name of their president or treasurer. 2. Their property or capital is represented in shares and certificates of stock differing in no respect from shares and stock certificates in corporations. 3. The death of a member, his insolvency, or the sale or transfer of his interest, is not a dissolution of the company. 4. They have perpetual succession, or what is sometimes called the immortality of corporations. 5. They can take and hold real and personal estate in a collective capacity and in perpetual succession. These are all attributes of a corporation, and if we look into the books for elementary definitions, we shall find that corporations have no other attributes except the technical one of a common seal to distinguish them from common law partnership. On the other hand simple partnerships have none of the attributes or qualities here mentioned. Mere names are of but little importance. Looking at the substance and nature of things, it is plain that in respect to the absence of a common seal merely, these joint stock associations are like partnerships. In the other and vastly more material respects mentioned, they are like corporations, although they are not declared to be such by the legislative acts referred to. And so it was in the case of the general banking act of 1838. The word corporation is not used in that act, yet the institutions or associations organized under it have been uniformly held to be corporations in the fullest and most exact sense. As to personal and individual

Waterbury *v.* Merchants' Union Express Company.

liability, I may add, that this is an incident both of partnerships and corporations, uniform and invariable in the one case, subject entirely to the legislative will in the other.

What, then, are the true relations of a shareholder in one of these associations, and by what rules and analogies are his rights to be determined where he seeks a controversy with the body to which he belongs. These institutions are of such recent origin among us, and have arisen under laws of such recent enactment, that we are without judicial precedents in this country. It seems to me, however, plain that in controversies like the present one, we must follow mainly the analogies afforded by laws and jurisprudence in the case of corporations, instead of those derived from the law of simple partnership. I say mainly, because it may not be proper to push the principle to its extremest consequences. It may very well be that in a case of actual insolvency, the shareholder, in view of his contingent liability, should have a quicker remedy to wind up and close the concern, than the statute laws of this state allow in the case of corporations other than those organized for banking purposes. (*See* 2 *Edmonds' Stat.* 484.) Be this as it may, it is nevertheless true, that the situation and relations of a shareholder in one of these associations, are in other respects like, and very exactly like, those of a stockholder in a corporation. His interest is represented by a certificate of stock, which he can sell and transfer by a single indorsement. He has confided the management to a board of trustees, or some other authority named in the articles signed by himself, and the same articles prescribe the duration of the company. He has no right of management or control, except that which he exercises originally or periodically in the choice of the managers, and even then his right is not, as in the case of partnership, equal to that of every other partner, but is equal only to the amount of stock which he owns. He is bound by the compact which holds the association together

and is the law of its existence, as the charter is the law of a corporation.

Guided by these relations, and by the nature of these companies, which have the express sanction of our laws, I am of opinion that the rules which govern simple common law partnerships afford but a feeble anology, if any at all, to govern us in the controversy which the plaintiff has instituted with the association to which he belongs, and in which he holds less than one thousandth part of the stock. I have said that precedents have not yet arisen in this country. These companies have, however, existed for some time in England, and my conclusion seems to be fortified by authority in that country.  Says Mr. Lindsay, in his *Treatise on Partnership*, "Nor is there any authority to the effect that companies with *transferable shares* are or can be dissolved by or on the happening of those events which are sufficient to dissolve or induce a court of equity to dissolve, an ordinary partnership;" and again he says : " But notwithstanding the often repeated assertion that at common law unincorporated companies with transferable shares are mere partnerships, it ought not to be inferred that what is sufficient to dissolve the latter is sufficient to dissolve the former.  There is a great, and with respect to the present question, a very material difference between the contract entered into between the members of any ordinary partnership, and the contract entered into between the shareholders of an unincorporated company with transferable shares."  I fully concur in these views, and they are decisive against the plaintiff in the present controversy, not only now, but apparently in all its stages, unless indeed he can claim the relief he asks for, on the very simple and intelligible ground of the insolvency of the company.  And here it will be proper to dispose of that point in the case, if indeed it can be said to be involved in the case at all.

The insolvency of the company is somewhat darkly and indistinctly suggested in the complaint, but I do not find any distinct averment of the fact.  Whatever is averred on

Waterbury v. Merchants' Union Express Company.

that subject is very distinctly denied in the answer, and the affirmative of the question must be maintained and proved by the plaintiff. Any suggestion or statement of this kind ought not to have been made, in the absence of all facts to uphold it. On looking at all the affidavits before me on this motion, I find a very satisfactory vindication of the financial situation of the company. The subscribed capital of the company was originally $15,000,000. From $3,000,000 to $4,000,000 have been called and paid in, and for this the company is able to show a very large real and personal estate, and equipment, for the transaction of its immense business, together with the good will which it has acquired. The company has a cash surplus of several hundred thousand dollars, and it owes no debts. The officers and executive committee state under oath, and apparently upon reasonable grounds, that the value of the property and equipment of the company, with that of the good will which it enjoys, very much exceeds the entire sum paid in by the stockholders. To these resources must be added the immense sum yet uncalled for and unpaid upon the subscription to the stock. This alone must amount to $10,000,000 or $12,000,000. There is no evidence before me, and I have no right to assume that, except Mr. Waterbury, all the subscribers to the stock are not able and willing to pay the sums they have agreed to pay. Now this vast amount of capital in reserve, is as much a part of its resources as the cash or property in actual possession. With an estate, therefore, in hand, worth some millions of dollars, owing no debts, and holding valid obligations or subscriptions for the payment of at least $10,000,000 more, what further need be, or indeed can be said in regard to the solvency of this company ?

Proceeding to other grounds, stated or suggested in the motion papers, it is no cause for this suit, or for the proceeding now before me, that the Merchants' Union Express Company has not thus far conducted its busines with actual profit to its stockholders, nor can the suit be maintained on

the ground that thus far losses, whether small, or even con-
siderable, have occurred. What all the members of this
company agreed to, is, that the enterprise should be carried
on for fifty years, and that $15,000,0000 of capital should
be embarked in it, if necessary; of which each member
should pay the amount subscribed by him. There is no pre-
tense or suggestion that this compact was entered into by
means of any fraud practiced on the plaintiff or any one
else. It is, therefore, a binding compact, which the courts
have no right to dissolve, while the company is solvent, or at
least, until we are able judicially to determine that the en-
terprise is wholly impracticable, and the attainment of its
object morally impossible. A fraud practiced upon the
plaintiff might release him from his obligations, and justify
the cancellation of his subscription, but it would be of no
effect whatever on the question of dissolution and receiver-
ship. But fraud is not the theory of his case. He does not
wish to be separated from his associates, or from the enter-
prise. His avowed object is to wind up and close the
concern, and to share in the distribution of all the assets as
one of the associates or partners. This he cannot do in
violation of his agreement, and opposition, so far as I know,
to the wishes of his associates, who, as the evidence in the
case shows, are some ten thousand in number.

I repeat, the fact that some losses have occurred, affords
no justification for this suit, or for this proceeding. No
doubt, profit to the shareholders is the primary motive
which prompts the formation of such associations. But
people embark in such enterprises in full view of all the haz-
ards and vicissitudes of business—in full view, not only of
present and immediate chances of gain or loss, but also of
the failure and remote possibilities and capacities of the
business to be undertaken. This must have been eminently
true at the organization of the Merchants' Union Express
Company. In its very nature, the business in contempla-
tion was one to grow and increase with the increasing popu-

lation and the expanding wealth and commerce of this country. The plaintiff's disappointment in not receiving a dividend, or even the admission of an aggregate loss thus far by the company, is no reason for closing and winding it up, in the first and experimental year of its existence. On this subject it is only just, although not very material, to observe that whatever losses have been thus far experienced, they are wholly due to the combined opposition of the rival companies which have been mentioned, and which, by reducing their own rates far below a paying standard, rendered a reduction by this company necessary. That reduction was made and has been maintained, but never down to the rates of the competing companies. It is just and proper further to observe, that the increased volume of the business of the defendants' company, is now not merely compensatory, but more or less profitable. On this point the affidavits before me are quite explicit.

Passing to another view, as I have already said, the grounds of relief set forth in the plaintiff's complaint are fully met and controverted by the answer. This motion is made on affidavits or *ex parte* depositions of the plaintiff, and of certain persons who are officers and managers of the three old express companies. The plaintiff, in his own affidavit, says nothing to reinforce his complaint. The other persons referred to, develope a theory of the situation which may deserve a brief attention. It is their opinion, founded, as they say, on a long experience and careful observation of the express business in this country, that two competing companies cannot prosecute their business on the same lines without aggreate loss, and, consequently, that one or the other must ultimately fail. The conclusion they draw from these premises seems to be, that, as they are first in possession, have the greatest experience, and are, as they think, the strongest, their more youthful rival should retire, or be dissolved and wound up by judicial sentence. This conclusion is suggested in no very indistinct manner. On the other hand, the fact so assumed, that competition in the business

cannot live, and live profitably, is controverted, and, I am satisfied, entirely refuted by the opposing affidavits.

It is, however, upon the doctrinal conclusion, derived apparently from these carefully prepared statements and opinions of the persons referred to, that I propose to make one or two observations. In business and commercial rivalries it is perfectly lawful for each competitor to overcome and distance his rival, if he can. There is no divine right to a monopoly. It was never before suggested that a great enterprise must be closed on such a ground, because one or even many of those engaged in it, less than a majority of the whole, can be induced so to declare their wishes. If this doctrine can be maintained, then an express monopoly, having got possession of all the rail lines of the United States, is entitled by law to hold them forever against all competition. I say entitled by law, because it will never be difficult to find and purchase a stockholder in the rival company who will raise the question in the courts ; and the principle will not stop here ; it must apply to all enterprises requiring the association of capital, and it must henceforth become a regular function of the courts to inquire whether rival or competing enterprises can succeed, and if not, then to determine which of them must be closed by judicial decree. Such a proposition, if sanctioned for a moment, would be received with great dismay by the people of this country. It rises to a height of extraordinary absurdity when it is claimed, as in this case, that the existence of a powerful rival can be terminated on the *ex parte* opinion and oath of his competitor in a legitimate branch of business.

The remaining grounds for the relief which the plaintiff demands, resolve themselves into the alleged personal misconduct of the members of the executive or managing committee. This has, I think, nothing to do with the present motion for a receiver. The infidelity or misconduct of some, or even of all of the trustees or managers of such an association, affords no ground for taking away the rights of the shareholders who

Waterbury *v.* Merchants' Union Express Company.

constitute the company, either by dissolving it, or taking away its management, and placing it in the hands of an officer of the court. In such a case, the principles of remedial or preventive justice go no further than to enjoin or forbid the misconduct, or remove the unfaithful officer. I am not aware of any authority for dissolving a corporation or an unincorporated stock association, or for taking its management from its proprietors or shareholders, on the mere ground that one, or even all of its trustees are unfaithful. The court may enjoin the trustee, or suspend or remove him, and, if necessary, may order a new election, but cannot substitute its own officer. In the case of the Merchants' Union Express Company, both by statute law and its articles of association, three of its managers are sufficient to carry on its business. There are more than that number upon whom no imputations are cast by the plaintiff, or by the persons from the rival companies who have given their depositions for this motion. It seems proper, however to observe, that all the accusations and charges of misconduct and unfaithfulness are fully answered by the oaths of every member of the executive committee, and by the corroborating depositions which have been made in opposition to this motion. I confess, the impression on my mind is very strong that these gentlemen have done nothing to forfeit the confidence of the stockholders, or which would warrant the court, even at the final hearing of the cause, to interfere with their existing relations of the company. That nothing of the sort can be done on this motion, is quite too plain for further discussion.

In speaking of the peculiar part taken in this controversy by the officers and managers of the old and now rival express companies, whose depositions are alone brought forward to sustain the plaintiff's motion, I am brought to another view, which as the case now appears, seems to me entirely decisive. The answer of the defendants was served on the plaintiffs more than two months ago. In that answer it is alleged with great distinctness, on the information and belief of the defend-

ants, that Waterbury, the plaintiff, is not the real party in suit, but that the suit is prosecuted wholly at the instigation, and in the interest of the rival express companies, which are the real and actual plaintiffs in the controversy. This grave and serious allegation called for a denial on the part of the plaintiff in preparing his own affidavit for this motion, and not less for a denial by the other persons referred to, whose *ex parte* depositions have been read. There is no such denial. I have not the slightest reason to suppose that this omission is unintentional or inadvertant, and, coupling it with many other circumstances which need not be particularly noticed, I am compelled to take the fact, as alleged by the defendants, to be true, for all the purposes of this motion, and taking it to be true, it is fatal to the suit. An illusory suit in the name of a shareholder, but really prosecuted by and in the interest of a rival and competing company, cannot be maintained for the purpose of dissolving or restraining another association or company, of which the nominal plaintiff may be a member. This has been repeatedly adjudged in the English chancery courts, and the principle is so plain as not to need further illustration. (*See Forrest* v. *Manchester & Co.*, 7 *Jurist, new series ; Burt* v. *British National, &c. Insurance Co.*, 5 *id.* 612.) In all that I have said, so far, no reference has been had to the rules which govern in mere common law partnerships, because the defendants are not, in my judgment, an association of that kind. If this were otherwise—if the defendants were a mere partnership, with none of the corporate attributes conferred on them by the statute of this state, I should still feel the same difficulty in finding any principle or authority to sustain the action on this proceeding. In partnerships which have no statute or corporate qualities, we shall find the following rules well settled : 1. The majority of members govern, notwithstanding the dissent of the minority, where there is no fraud or unfair dealing. In this case the plaintiff is one of many thousands, none of whom, so far as appears, concur with him. 2. When partners are numer-

Waterbury *v.* Merchants' Union Express Company.

ous and the duration and arrangement of a concern are provided for by articles, those govern the rights and relations of each partner. (*Story on Part.* §§ 123, 204, 213.) 3. A receiver will be appointed only with a view to a dissolution and winding up. Receivers are not appointed to carry on and manage the business of a partnership. (*Story on Part.* 664, 665. 2 *Paige*, 310.) 4. A dissolution will not be decreed except in cases of insolvency, or where the entire capital is spent and some of the parties are unwilling to go further, or where the undertaking in its nature and essence presents some insurmountable difficulty, or where one partner is guilty of such grossly improper or fraudulent conduct as amounts to an exclusion of his copartner from the concern. In these, and possibly some other extreme cases, a court of equity may decree a dissolution and receivership. But I find nothing to justify judicial intervention in a case like the present.

In closing, I deem it proper to say, what the evidence before me fully demonstrates, that the Merchants' Union Express Company is an institution having vast, varied and useful relations with the public. It is now in active and successful operation over the most populous and commercial regions of the United States. If the suppression of the company could be brought within the powers and duties of this court no public good, but great public inconvenience and loss, would be the result. The necessary effect of such decision would be to restore permanently a monopoly in a branch of business of great and increasing importance in this country to merchants and many other classes of people. I do not see the slightest pretext for such an interference with a legitimate and honorable enterprise, and certainly feel no regret that the facts and principles which the case involves have brought me to this conclusion.

The motion for a receiver, &c. must be denied.

[NEW YORK SPECIAL TERM, September 2, 1867. *Geo. G. Barnard*, Justice.]