King, J.
This case is presented to us on a motion to suspend an order made by the court of common pleas dissolving a temporary injunction allowed in the case upon the filing of the petition in the court of common pleas. That petition was' filed there on the 13th day of January, 1897; and upon the filing of it there was allowed,by LindleyW. Morris, a judge of the court of common pleas, an injunction as prayed for, to remain until the further ordei of the court, upon the plaintiff’s giving bond conditioned according to law, with sureties to the satisfaction of the clerk, in the sum of ten thousand dollars.
*549 The injunction prayed for is set forth in the first, second, third and seventh paragraphs of the prayer, and reads as follows:
“Plaintiffs therefore pray:
“1st, That an inquiry and accounting may be had as to the loss and damage suffered by the Woolson Spice Company by reason of the reductions in the price of its product, and hat said company and said defendants controlling its said policy may be enjoined from selling its said coffee at such prices as to entail a loss upon said company and its shareholders.
“2nd. That the defendants, Alvin M. Woolson, William A. Brigham, Lawrence Newman, James Secór, John B. Ketchum, Rudolph A. Bartley, Graff M. Acklin, John Berdan and Frank Williams, may be restrained from acting in any way as directors of said The Woolson Spice Company.
“3rd. That said The Woolson Spice Company be restrained from registering any transfer of said seventeen hundred and thirty-nine shares of said stock so as aforesaid purchased by said The American Sugar Refining Company, until the further order of this court, and until such time as the court can pass upon and adjudge the ownership of said stock; or if such transfer has been registered,then that such registry be decreed to be null and void.”
There is a fourth prayer asked, which is to enjoin the American Sugar Refining Company; but, as no service was ever had upon that company, there is no injunction against them,
“7th. That the defendants and each of them be enjoined and restrained from refusing to allow plaintiffs and their attorneys to inspect the books and records of The Woolson Spice Company at any reasonable hours.”
On the hearing of a motion to dissolve this injunction, the court of common pleas, on March 22nd, dissolved it; and an appeal was'taken from the order of dissolution, and the court of common pleas suspended the operation of that order for a period of ten days, which period was afterwards extended by this court until the- motion to suspend could be heard. This motion has been heard and submitted to this *550 court, upon the affidavits which were filed in the court of common pleas, upon the transcript of certain oral evidence there taken, and upon additional affidavits filed in this court. It makes a large volume of evidence; and the questions involved in the motion have been argued by counsel upon either side, with ability, and a good deal of attention has been devoted to the citation of authorities and to the argument of the facts involved in the case.
The view that we have taken of this case will not require us to review particularly the evidence offered. The arguments upon the facts related mainly to the question whether the evidence showed, upon the hearing of this motion, that certain stock belonging to individuals, who, at the time, owned it — stock of the Woolson Spice Company — had been sold by them and purchased by The American Sugar Refining Company.
The injunction was dissolved by the court of common pleas, it seems, mainly upon the ground that the evidence failed to show that The American Sugar Refining Company were the purchasers of this stock. We have not read the evidence carefully, for the purpose of determining that, question. As advised of what the evidence is, we would be unwilling on this motion to hold that the American Sugar Refining Company were not purchasers of the stock, or that, if not purchasers, at least they were not beneficially interested in its purchase. But we think that the question which should determine this motion lies back of that; and therefore we have not found it necessary, as I have said, to review the evidence and make a finding upon that question, and hence it will be unnecessary for us to pass upon certain objections which were urged to testimony that was offered, evidently with a view to 'show that The American Sugar Refining Company were the purchasers and holders of this stock. I may briefly say, upon a hearing of the motion to dissolve, it would be very difficult to say just exactly what evidence would be competent, until the whole matter had *551 been .investigated. It is probably true, as a rule of evidence, that conversations between parties interested upon one side of a controversy, at which the other party was not present and had no means of knowing it, would not be competent to show the actions or intention of an opposite party — and a great deal of this evidence is conversations, declarations, some letters and telegrams between certain of the defendants who sold their stock; yet it is not worth while to say that it was incompetent; it could be offered ana used for such purposes as might be competent,- upon a full and final consideration of the case.
The question, however, which we have thought it necessary first to consider, and upon which we have determined this motion, is: Whether or not the plaintiffs, by their petition, and by the evidence they offer in support of it, show themselves entitled to an injunction; that is, on the matters which they have prayed for?
The plaintiffs in their petition set forth (and we may say that those allegations are either admitted or substantially proved), that they, the plaintiffs, naming all of them, except the plaintiff Kuhn:
“Are partners doing business in the city and state of New York, under the name of Arbuckle Brothers; that said co-partnership is engaged in the business of roasting and selling,coffee on a large scale in substantially the same manner as The Woolson Spice Company; that a principal feature of the business of said Arbuckle Brothers consists in the sale of coffee in packages ready for distribution under-the trade mark or brand of ‘Ariosa’; that by reason of the similarity of the business of said Arbuckle Brothers to that of the Woolson Spice Company, and the magnitude of the business of said parties, they have for some time past been engaged in active competition for the coffee trade in the United States. Said Arbuckle Brothers have for several years past been also engaged in the business of selling sugar in two-pound packages, ready for distribution in all parts of the United States, buying said sugar in barrels from the defendant the American Sugar Refining Company, or Sugar Trust, as it is usually known,
*552 “Plaintiffs further say that said Arbuckle Brothers, in the early part of the year 1896, having found that there was little or no profit in said branch of their business by reason of the expense of handling said sugar, determined to engage in the business of manufacturing and refining sugar, and to that end purchased land and commenced to plan for the erection and equipment of a certain mill refinery in the city of Brooklyn, in the state of New York, which was, about the'first day of December, 1896, and still is in process of construction. That the carrying out of said intention on the part of said Arbuckle Brothers would necessarily bring them into competition with the said TheAmercian Sugar Refining Company, in the sugar trade throughout the United States.
“That thereupon the said The American Sugar Refining Company, having learned of said intention on the part of said Arbuckle Brothers, for the sole purpose of inducing and forcing said Arbuckle Brothers to abandon their said plan of engaging in said sugar business, and thereby procure, foster and maintain a monopoly of said sugar business throughout the United States, determined to go into the coffee business upon a very large scale with the intention of so thereby injuring the coffee business of said Arbuckle Brothers as to compel them to give up their project of engaging in said sugar trade as aforesaid, and thereupon and in furtherance of its said scheme began to equip one of their idle refineries in the city of Brooklyn, with machinery for roasting coffee; but upon learning that the principal feature of the coffee business of said Arbuckle Brothers was the marketing as aforesaid of coffee in packages under a trade name, and that it would be impossible to carry our their purpose aforesaid without acquiring the right to sell coffee in a similar way, under a well-established trade-mark or name, which could not be built up independently in a short time, said The American Sugar Refining Company, for said reasons alone, determined to and did, on or about the 16th day of December, 1896, purchase of the defendants Alvin M. Woolson, William A. Brigham, John Berdan, Lawrence Newman, James Secor, Graff M. Acklin, John B. Ketcham, Rudolph A. Bartley, Frank Williams and others, (the owners of all the stock of said The Woolson Spice Company, except the sixty-one shares so as aforesaid owned by said plaintiffs), a part of the stock of the said The Woolson Spice Company then owned by said parties, and that thereafter and *553 prior to December 26, 1896, said The American Sugar Refining.Company did purchase of the owners thereof all the remaining shares of the said stock of said The Woolson Spice Company, except the sixty-one shares aforesaid; that •the purchases of said The American Sugar Refining Company aggregated seventeen hundred and thirty-nine shares ■(1739) out of a total of eighteen hundred (1800) -shares; that as said plaintiffs are informed, said shares of stock were transferred to the said The American Sugar Refining Company by a simple endorsement in blank of the names of the ■several owners thereof on the back of said certificates, and the plaintiffs say that the said The American Sugar Refining Company was not authorized by its charter or by the laws ■of the states of New Jersey or Ohio, to purchase said shares ■of stock of The Woolson Spice Company; that said purchase of stock was made with the sole end and • aim of procuring ■and maintaining a monopoly of the sugar trade throughout the United States; and that said purchase of stock of The Woolson Spice Company, by said The American Sugar Refining Company, was and is wholly illegal and void.”
“That immediately after the purchase of said stock said The American Sugar Refining Company openly and notoriously announced that said The Woolson Spice Company was to be, thereafter, managed solely in the interest of said The American Sugar Refining Company, for the purpose of .carrying out their plan of injuring the trade of said Arbuckle Brothers as aforesaid, and without regard to the interests of said The Woolson Spice Company, or the shareholders of said last-named company, other than said The American Sugar Refining Company.”
• Omitting, then, a part of the petition, the seventh para.graph is:
“That after the consummation of said sale of said shares to said The American Shgar Refining Company, the defendant, Alva M. Woolson, was employed, according to the direction of said The American Sugar Refining Company, ■as the general manager of said The'Woolson Spice Company, ■and the defendant William A. Brigham, as secretary of said company and assistant to the general manager; that thereafter, on or about the 17th day of December, .1896, the said The American Sugar Refining Company ordered and directed «aid Alvin M. Woolson and William A. Brigham to reduce *554 the price of coffee manufactured and sold by The Woolson Spice Company, one-half cent per pound, which said Wool-son and said Brigham, in accordance with said orders and directions, did, without the advice, counsel or direction of any Board of Directors of said The Woolson Spice Company, and thereafter, on or about the 21st day of December, 1896, the price of the coffee of said company was again reduced one-half cent per pound in the same manner, solely under the order and direction of said The American Sugar Refining Company. That said Arbuckle Brothers did not reduce the price of said coffee sold by them, as aforesaid, in order to meet the reduction of said The Woolson-Spice Company until the first day of January, 1897, at which time said Arbuckle Brothers reduced the price of the coffee sold by them to meet that of the said The Woolson Spice Company, to-wit: one cent below the price existing on the 16th day of December, 1896. That on the following day, the second day of January, 1897, and in the morning thereof, the said Woolson and Brigham, in the same manner, and solely at the order and direction of said The American Sugar Refining Company, made a further reduction in the price of their said coffee of one-half cent per pound, making a total reduction of one and one-half cents per pound since the 16th of December, 1896.
“Plaintiffs further say that said Woolson and Brigham: did, on the 11th day of January, 1897, in the same manner, and solely at the order and direction of said The American Sugar Refining Company, make a further reduction in the price of the said coffee of The Woolson Spice Company of one-half cent per pound, making a total reduction two cents per pound since the 16th day of December, 1896.”
“These plaintiffs say that said reductions were not made-in good faith, by or at the direction of the Board of Directors of said The Woolson Spice Company; but on the contrary, the same were entirely unnecessary, and were not warranted by any condition of affairs existing in the coffee trade. That during the time when said reductions were made there was no reduction in the price of the raw material used by said company in its said business; but on the contrary there was an advancing market. That said reductions were not made by the Board of Directors of said company, but were made solely by virtue of the orders and - direction of said The *555 American Sugar Refining Company, and were not made in the interest of said The Woolson Spice Company or its stockholders, but were made solely for the purposes above stated, to-wit: to frustrate the plans of said Arbuckle Brothers, and to force them to abandon their intention of engaging in the business of refining sugar.
“Plaintiffs further say that the price of the said coffee of the Woolson Spice Company is now fixed by said parties who are controlling the policy of The Woolson Spice Company, and the sales of their said coffee are made at an actual heavy daily loss, caused by said unnecessary reductions in the price; that the losses to the said The Woolson Spice Company and its stockholders by reason of the same is from five hundred to one thousand-dollars- a day, and if said prices are continued, and especially if further reductions are made as said The American Sugar Refining Company gives out and threaten they will be made, and as these plaintiffs have reason t.o believe and fear they will be made, unless this court shall come to their relief, the value of the stock in said company owned by them, will be entirely frittered away and destroyed.”
That is all I care to read of the petition.
In saying that these allegations are either admitted or that the proof sustains them, I mean substantially so. There are certain allegations in there that are probably disproved; but the petition upon its face and stating the case which the plaintiffs come into this court to make, raises the question whether these plaintiffs are entitled to ask for an injunction.
They aver, in a part of the petition which I have not read, that Kuhn, the plaintiff, has one share of stock, standing in his name upon the books of The Woolson Spice Company, but that it actually belongs to the Arbuckle Brothers; and the persons, whose names I have read, aver that they after-wards, in the latter part of December, 1896, purchased sixty shares of stock, making their total holding sixty-one shares. The petition then stands before us as if Arbuckle Brothers had brought this action in the name of only the partners interested, and Kuhn may be dropped out from any further consideration. We have, then, Arbuckle Brothers, an old *556 and well-established firm in the business of selling package coffee, asking a court of equity to enjoin the Woolson Spice Company and its directors and officers from managing their own business according to their own best judgment. They also ask to enjoin these directors from acting in their office, because they say they are not legal directors, having sold all their stock Upon this point it is only necessary to say that the proof clearly shows that the defendants who are thus attacked are each of them the owner of one share of stock in the company. It is true that they are parties to an outstanding executory contract, providing that they shall, at the option of the purchaser named therein, sell these several shares of stock at a price therein named, but the option has not yet been exercised,and the stock is still theirs. It was urged in argument that the original agreement provided for the sale of all the stock. This is-true, but equally true is it that a subsequent and supplementary agreement was entered into by the parties to the original agreement, by which the sellers, directors of the Woolson. Spice Company, were to retain each one share of this stock, and they were therefore competent to act in that office. But the basis of the injunction sought in this case is that the defendants selling the products of this company at a less price than they can be profitably produced, is injuring the stock and depreciating its value. This complaint and appeal to a court of equity to protect the Woolson stock from depreciation and the Woolson Company from loss, is made by persons who aver and who, it is conceded, are conducting the largest competing business in the United States. The plaintiffs say that they did not cut their prices until they were compelled to by the Woolson Company, but it is difficult to see what merit can be found in this assertion. The interest of plaintiffs, though owners of sixty-one shares of stock in the Woolson Company, is plainly not in preserving the value of the Woolson Company’s stock; and that the plaintiff did not so understand it, is made apparent by the prayer of *557 their petition, which does not stop with asking an injunction, but asks forjthe appointment of a Receiver winding up the business of the corporation,' the sale of its property and the division of the proceeds among its stockholders, If the. court, when it comes to determine that branch of the case, can grant the prayer of the petition, it would thus wipe out a leading competitor, and leave the trade entirely, or practically so, to^the plaintiffs. However, our concern is not with the receiver at present. We are to inquire whether they are entitled to an injunction. Whether they come forward in good faith, representing interests that are in jeopardy, and rightfully asking to enjoin illegal acts on the part of the directors and managers of the Woolson Company.
I desire here to refer to a few authorities which wiU better express the situation, both in fact and law, of the plaintiffs, than anything I can say.
In a case which is cited by counsel for both parties,in 52 Barbour's Reports, Belmont v. Erie Railway Company, reading from page 662, the court say:
“Prima facie, every shareholder has a right to come here, as representing all the shareholders, to prevent an act of this description” (that is, of. the description set forth in this bill), “and the'court does not require any evidence that the remaining shareholders, or any of them, have concurred in the filing of the bill, because, if the act be illegal, it is presumed to be for the benefit of all that it should be stopped; but if it be made to appear, and the attention of the court is called to the fact, that the plaintiff is not moving in his own behalf, but is set in motion by some one else who undertakes to pay the costs, and to indemnify him against all risk, the whole aspect of the case is at once materially altered, because the suit is no longer under the direction of the plaintiff, but another person whose interests may be utterly adverse to those of the company, is in a position to control the proceedings. What the court looks to is this: Is the suit bona fide the plaintiff’s own suit, or is he merely .the hand by which some one else acts? And there is no ingredient entitled to greater weight, in arriving at a conclusion on this point, than the question, who is responsible *558 for the costs of the suit. * * * Nor are we without authority to the same point in our own state. The court, in 50 Barb., 157, said: ‘In the answer it is alleged with great distinctness, on the information and belief of the defendants, that the plaintiff is not the real party in interest, but that the suit is presented wholly at the instigation and in the interest of the rival express companies, which are the real and actual plaintiffs in the controversy. An illusory suit in the name of the shareholder, but really prosecuted by and in the interest of a rival and competing company, cannot be maintained for the purpose of dissolving or restraining another association or company, of which the nominal plaintiff may be a member.”
That opinion cites another case, which has also been cited here several times, and, as it is an important one, I will refer to it. It is the case of Forest v. Manchester, etc., Ry. Co., 4 DeGex,Fisher & Jones Rep., 125. In that case the plaintiff, on behalf of himself, and other shareholders, sought an injunction to restrain the company from running steam vessels in a manner alleged to be ultra vires, but he admitted, on cross-examination, that he was a shareholder in a rival company, and instituted the suit by direction of the latter company, who indemnified him against costs. I will read a little from, page 129, which I think is very profitable reading:
‘‘But the ground upon which I proceed is entirely that of personal exception to the character of the plaintiff, and the foundation of my decision is contained in this passage of the plaintiff’s own examination, not attempted to be qualified or questioned. He says in that examination: ‘The directors of the packet company directed the institution of this suit and indemnify me against costs.’ It is not that they persuaded him to institute the suit, not that they instigated the suit, but that the directors of the other company have ‘directed the suit’ andaré to indemnify the plaintiff against the costs of it. To use a familiar expression, the plaintiff is the puppet of that company. It has been a very wholesome doctrine of this court that one shareholder having in view the legitimate purposes of the company, may be permitted in this court to maintain a suit on behalf of himself *559 and the other shareholders of the company, but the principle upon which that constructive representation of the shareholders is permitted,indisputably requires that the suit shall be a bona fide one, faithfully, truthfully, sincerely, directed to the benefit and the interests of those shareholders whom the plaintiff claims a right to represent. But can I permit a man who is the puppet of another company to represent the shareholders of the company against whom he desires to establish the interest and benefits of a rival scheme? That would be entirely contrary to the principle upon which this constructive representation has been permitted to be founded. When the plaintiff sues in that capacity, any personal exception to the plaintiff remains, and it would be a direct contradiction of every principle of -truth and justice if I permitted a man to come here clothed in the garb of a shareholder of Company “A,” but who is in reality.a shareholder in Company “B,” and has no sympathy whatever with, no real purpose of promoting the interests of the other company? Such a thing would be so much at variance with the principles of a court of equity that it would be impossible for it to entertain a suit of that description, which is a mere mockery, a mere illusory proceeding.”
These authorities come nearer to the question at issue thamany others that have been cited. The only distinction which can be pointed out'between the reported cases and the one at bar is that the former w_ere brought by an individual, who it is asserted had been procured to institute the action by an agreement to indemnify as to costs, while in the latter, the plaintiff, partnership, has brought the suit directly. The distinction is not important. The reasoning in both cases referred to rests upon the fact that the real instigator of the suit was a rival business concern. We have so far failed to find any reported case furnishing an exact parallel to the one before us; perhaps because no business house, m its own name, has hitherto sought the aid of a court of equity to enjoin a competitor from managing its own business. In the cases cited that was the real attempt, but they gracefully put another’s name foreward as plaintiff. We fail to observe any distinction of importance, and the reasoning of the decisions is entirely applicable to the case before us. The plaintiffs here frankly allege that having *560 been a long time establishing a large and profitable business in the coffee line, it occurred to them that they would become competitors of the American Sugar Refining Company in the sugar line, and they started out to erect a refinery; that thereupon,they say, The American Sugar Refining Company, to off-set this attempt at competition in the sugar business and to drive plaintiffs out of it, have embarked in the coffee business, and in this latter attempt the hand of the court should be laid heavy upon them. We do not think that the plaintiffs are in a position to ask a court of equity to interfere in this matter. There is nothing shown indicating anything different in the conduct of the Woolson Company’s business than might be anticipated or expected at any time from the managers of a. similar concern. It will not do for a court of equity to take charge of this plant, undertake to control it by injunction, substituting the judgment of the court for the discretion of its directors. If, as alleged, the management of the Woolson Company are selling its product for less than cost, they had only recently entered upon that policy, and it may be the part of the wisest business sense that has prompted its management to reduce the prices of its products.
A. L. Smith,^John Kumler and E. J. Marshall, for •Plaintiff. Doyle & Lewis, for Defendants.
It is claimed that defendants should be enjoined from selling their products at such unprofitable price. We are not satisfied from the evidence that they are making such sales. The evidence taken after the business had been operated under its new management for about three months, tends to show that the corporation is doing business at a profit; but if it were not, for the reasons already given, the court will not interfere at the suit of a competitor in business to restrain the directors from exercising their judgment in the matter of prices. For aught that appears the reduction in price is a temporary expedient, having for its purpose an enlargement of the trade and business, and may, if it does not airead}', ultimately result in increased profits. However, that question is one in the control of the directors, and a court of equity cannot interfere with their discretion unless the proof clearly shows an abuse of it.
For these reasons the court are of opinion that tüe motion to suspend the order dissolving the injunction should be and it is overruled.