(No. 5591. Decided August 18, 1905.)

ROBERT BREEZE, *Appellant,* v. THE LONE PINE-SURPRISE
CONSOLIDATED MINING COMPANY *et al., Respondents.*[1]

ACTIONS—REAL PARTY IN INTEREST—VEXATIOUS SUIT—EQUITY—
PLEADINGS—ANSWER IN EQUITY ALLEGING THAT PLAINTIFF IS NOT REAL
PARTY IN INTEREST — FAILURE TO REPLY — DISMISSAL — STOCKHOLDER
PURCHASING STOCK FOR PURPOSE OF SUIT. A suit by a stockholder, to
set aside a transfer of mining property and appoint a receiver for
a corporation on the ground of fraud on the part of the trustees
and the illegality of a stockholders' meeting ratifying the sale, is
properly dismissed for want of equity, where allegations of the
answer of the defendants stand confessed to the effect that plaintiff
is not the real party in interest, but acquired certain stock for the
sum of $20, after the stockholders' meeting complained of, for the
purpose of bringing the suit in the interest of antagonistic parties,
for whom plaintiff is acting as trustee.

Appeal from a judgment of the superior court for Spokane
county, Kennan, J., entered September 17, 1904, upon over-
ruling a demurrer to an affirmative answer, dismissing an
action brought by a stockholder to set aside a corporate sale
of mining property. Affirmed.

*W. T. Stoll, C. S. Voorhees, Reese H. Voorhees,* and *B. B.
Adams,* for appellant.

*Post, Avery & Higgins* and *W. J. C. Wakefield,* for re-
spondents.

ROOT, J.—This action was brought by appellant to annul
and set aside a transfer of mining property made, or as-
sumed to have been made, by respondent, The Lone Pine-
Surprise Consolidated Mining Company, a corporation, to
the Pearl Consolidated Mining Company. The appointment
of a receiver for the former company was also asked. Lack
of power in, and fraud on the part of, the trustees, are
alleged as grounds affording such relief. To the complaint,
respondents made an answer, consisting of certain admissions,

1Reported in 81 Pac. 1050.

a general denial of all fraudulent acts and purposes, and an affirmative defense. The latter was couched in the following language:

"For further answer, and by way of defense, defendants allege:

"(1) That on or about October 3, 1903, a resolution was passed at a meeting duly called of the board of trustees of the Lone Pine company, defendant herein, to sell three of the four or more mining claims owned by said company, to wit, the Lone Pine claim, the Surprise claim, and the Pearl claim, to the defendant the Pearl company, in consideration of the Pearl company paying the indebtedness of the other company, amounting to about twenty-eight thousand dollars ($28,000); that thereafter, and on or about November 9, 1903, a stockholders' meeting of said Lone Pine company was duly held, and a resolution at said meeting was passed, ratifying said sale and approving of the same, more than two-thirds of the stock of said Lone Pine company voting in favor thereof; that at said time, and as well at the times of the meetings thereafter held, referred to in the complaint, the shares of stock described in paragraph 3 in the complaint as belonging to this plaintiff, were owned by one W. F. Kane, and stood on the books of the company in his name; that he was duly notified of said stockholders' meetings and of the proceedings about to be taken at such meetings, and the reason why the same were called and held, and no objection or protest on his part was made to any of the resolutions or proceedings taken at such meetings.

"(2) That at the time of the stockholders' meeting, held on November 9, 1903, referred to in the preceding paragraph, and at the time of the other stockholders' meetings and meetings of the board of trustees, referred to therein and in the complaint, this plaintiff was the owner and holder of no stock whatsoever in either of the defendant corporations, and defendants further allege that he is not now in fact the owner of the shares of stock referred to in paragraph 3 of this complaint, although the same stands in his name, nor is he the real party in interest in this action, but that said stock was purchased by him for the sum of about twenty dollars ($20) with full knowledge on the part of himself and those whom he respresents of the action taken at a meet-

ing of the board of trustees on October 3, 1903, and at a stockholders' meeting on November 9, 1903, and the subsequent meetings referred to in this action and in the complaint, and that said stock was acquired for the sole purpose of bringing this action, not in the interest of the plaintiff, but that the plaintiff in this matter is the mere nominee and tool of others in the background, and that said other parties are G. B. Dennis and E. Dempsie and others interested in a corporation known as the Insurgent Company, and Isaac Anderson and N. W. Halsey & Company, part of whom are seeking to compel the defendant corporations to sell and transfer to them, for a nominal consideration, a part of the mining ground in controversy in this action, adjoining the Insurgent claim, owned by the Insurgent Company, and the rest of said parties are seeking to embarrass and annoy the defendant Theis for the purpose of bringing about the settlement of a certain lawsuit now pending, wherein said Theis is plaintiff and said Anderson and N. W. Halsey & Company and others are defendants, said action being brought to restrain the defendants from their attempt to deprive Theis of stock in the Spokane Falls Gas Light Company, a corporation of this county; that plaintiff is also the nominee and tool of Philip Creasor, plaintiff in another action of similar character, brought against these defendants, in bringing this action, and the same is being prosecuted in his interest because of the fact that he, himself, has not even a semblance of a cause of action, and for other inequitable reasons; that this action is not brought in good faith by the plaintiff, and he has no personal interest therein; that it is not brought for the benefit of any of the *bona fide* stockholders of either of the defendants, or for the benefit of either of the defendant corporations, but for the improper, illegitimate and inequitable purposes above mentioned."

To said affirmative defense, appellant interposed a general demurrer, which, by the trial court, was overruled. Appellant put in no reply, and announced no intention to stand upon his demurrer, whereupon, in due time, an order of default and judgment of dismissal was regularly entered. From this, an appeal is prosecuted.

It is questionable whether an appeal lies from such a de-

termination of an action. *Pacific Supply Co. v. Brand,*
7 Wash. 357, 35 Pac. 72. But as this question is not dis-
cussed in the briefs, we will not pass upon it. We think
the ruling of the trial court in overruling the demurrer was
justified. This was an equitable proceeding. Under the
demurrer, we must assume as correct the facts properly
pleaded in the affirmative defense. Deeming these to be true,
we are not impressed with the equities of appellant's cause.
He does not come into court with a showing that calls for
the intervention of the strong arm of equity in his behalf.
If the equities of the controversy were with him, it was
highly important that he should have replied to the affirma-
tive defense in the answer, and disclosed all of the facts sur-
rounding the questions involved. Before a court of equity
grants such relief as appellant prays, it should be fully ad-
vised of all the facts, and be assured that equity and good
conscience require the exercise of its powers.

In the case of *Waterbury v. Merchants' Union Express
Co.,* 50 Barb. 157, the court employed the following lan-
guage:

"The answer of the defendants was served on the plain-
tiffs more than two months ago. In that answer it is al-
leged with great distinctness, on the information and belief
of the defendants, that Waterbury, the plaintiff, is not the
real party in suit, but that the suit is prosecuted wholly at
the instigation, and in the interest of the rival express com-
panies, which are the real and actual plaintiffs in the contro-
versy. This grave and serious allegation called for a denial
on the part of the plaintiff in preparing his own affidavit
for this motion, and not less for a denial by the other
persons referred to, whose *ex parte* depositions have been
read. There is no such denial. I have not the slightest
reason to suppose that this omission is unintentional or in-
advertent, and, coupling it with many other circumstances
which need not be particularly noticed, I am compelled to
take the fact, as alleged by the defendants, to be true, for
all the purposes of this motion, and taking it to be true,

it is fatal to the suit. An illusory suit in the name of a shareholder, but really prosecuted by and in the interest of a rival and competing company, cannot be maintained for the purpose of dissolving or restraining another association or company, of which the nominal plaintiff may be a member. This has been repeatedly adjudged in the English chancery courts, and the principle is so plain as not to need further illustration."

In the case of *Camblos v. Philadelphia etc. R. Co.,* Fed. Cas., No. 2,331, p. 1089, the court said:

"It is charged and not denied that he acquired his stock 'on account and in the interest of the Adams Express Company, and solely with the view of giving himself a supposed status in court, to enable him to maintain the present suit ostensibly as a stockholder of the Philadelphia and Reading Railroad Company, but really as an agent of the Adams Express Company,' and 'that the expenses of the said suit are to be borne by the said company.' And these averments are corroborated by the fact that his bill is filed at the same time with and is an exact counterpart of the express company's bill. He does not, therefore, come into court with a *bona fide* complaint as a stockholder really seeking protection, but as the auxiliary of another party whose proceeding is adverse to his interest as a stockholder. It is not a question of his motives, but of the genuineness of the character in which he presents himself, and of the good faith of his appeal for summary relief. A court of equity is not the redresser of simulated wrongs, nor will it exert its strong arm to relieve a complainant in a position which he has voluntarily assumed, with a full knowledge of its perils."

Mr. Thompson, in Vol. 4, § 4568, of his Commentaries on the Law of Corporations, among other things, says:

"If, on the other hand, it is made to appear that the plaintiff is really not moving in his own behalf and taking the risk and responsibility of the action in good faith, but is put forward as a puppet by some concealed interest which has indemnified him against all risk,—a court of equity will not listen to his complaint."

Green's Brice's Ultra Vires (2d ed.), p. 652, while holding that a person may purchase stock to prevent a corporation from doing unauthorized acts, nevertheless says: ". . . but the plaintiff on the record must be the person urging on the suit—he cannot be the mere nominee and tool of others in the background." At § 736, 2 Cook, Corporations, the author says:

"The law is well settled that if a stockholder institutes a suit in behalf of himself and other stockholders to enjoin or to bring to an accounting the corporate directors, and such suit is instituted, not to protect and benefit the stockholders' interest in the corporation, but to benefit some other corporation, the court will refuse to entertain the suit and will dismiss it. . . . But where the transfer is merely nominal, the transferee cannot bring a suit herein, since he has no pecuniary interests of his own to protect, and equity will not aid him."

The same author, in § 737, and notes thereto, calls attention to the rule of the Federal courts which prevents any person from maintaining such an action as this therein based on matters occurring before he became a stockholder in the corporation.

The court of appeals of Colorado, in the case of *Beshoar v. Chappell,* 6 Colo. App. 323, 40 Pac. 244, spoke as follows:

"If this litigation had been honestly instituted by a stockholder for the protection of his and other stockholders' rights, and was not so evidently a suit instigated by a rival company for its own interests, we should strive to be astute to discover some remedy for a very evident wrong. The far-reaching and flexible nature of equitable powers might, with proper proof, and under other circumstances, enable us to do justice as between the stockholders of the Grey Creek Company and Chappell, its officer and director. But we have no inclination to struggle for this result, because it is a well-settled principle that whenever it is made to appear that the suit was not begun in good faith by a shareholder for the protection of his rights, but was in reality originated

and prosecuted by another corporation for its own benefit, the court will consider what led the plaintiff to institute his suit, and, finding some other reason than a desire to protect stockholders' rights, will refuse to entertain the bill. . . . It seldom happens that shareholders, otherwise than for the protection of their own interests, come into courts of equity to seek redress for wrongs done the corporation of which they are members. But, wherever it is apparent that this has been done, the courts have never hesitated to send the plaintiff out of court, and refuse him relief."

Reference is here made to the opinion in the case of *Pitcher* against these same respondents, for a more complete statement of the facts out of which this suit arose, and for a further expression of our views upon some of the questions presented. That may be considered a companion case to this, and is decided at the same time.

The order and judgment of the superior court is affirmed.

CROW, RUDKIN, and FULLERTON, JJ., concur.